**UNITED STATES of America,**
**Plaintiff-Appellee,**
v.
**Philip MIRENDA, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**
v.
**Jose M. VERDUGO–MEDINA, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**
v.
**Ramon FRAGOSO–HERRERA,**
**Defendant-Appellant.**

**Nos. 26824, 26825, and 26826.**

United States Court of Appeals, Ninth Circuit.

June 4, 1971.

Rehearing Denied in No. 26825 July 20, 1971.

Clay G. Diamos (argued), Tucson, Ariz., for defendant-appellant Philip Mirenda.

Ann Bowen, Asst. U. S. Atty. (argued), Richard K. Burke, U. S. Atty., Tucson, Ariz., for appellee.

John R. McDonald (argued), Tucson, Ariz., for defendant-appellant Jose M. Verdugo-Medina.

R. Lamar Couser (argued), Tucson, Ariz., for defendant-appellant Ramon Fragoso-Herrera.

Before BARNES, BROWNING and TRASK, Circuit Judges.

BARNES, Circuit Judge:

The three actions entitled as above are appeals from a joint trial of three of five defendants jointly indicted. The charge was that they did, knowingly and with intent to defraud the United States, "receive, conceal, buy, sell and facilitate the transportation, concealment and sale of 325 pounds of marijuana, at Tucson, Arizona, on June 7, 1970," after the said marijuana had been imported contrary to law, when said defendants knew the said marijuana had not been presented for inspection at the point of entry into the United States, namely Nogales, Arizona. The inspection was required by 19 U.S.C. § 1461;[1] the concealment and sale allegedly violated 21 U.S.C. § 176a.[2]

Each of the defendants urge as error on this appeal various points. Some are urged only by one defendant; some by two defendants; one by all three.

Without passing on appellant Fragoso's first alleged error—withdrawn as moot at the time of oral argument—we adopt the appellee's division of the alleged errors into eight categories, noting which defendants urged the point.

I. (Urged by all three defendants.) Error in refusing a continuance of trial.

II. (Urged by Mirenda and Fragoso.) Error in the court's order as to the interview of the informer by counsel for defendants; and in government counsel's implementation of the order.

III. (Urged by Fragoso.) Error in the court's refusal to permit Fragoso to reopen his case for the impeachment of an informer.

IV. (Urged by Mirenda and Medina.) Lack of proof by government there was "no presentment" for inspection of marijuana involved.

V. (Urged by Medina.) Error in allowing proof of money found on Medina at time of arrest.

VI. (Urged by Mirenda and Medina.) Error in admission of telephone records, without a sufficient foundation.

---

1. "All merchandise and baggage imported or brought in from any contiguous country, except as otherwise provided by law or by regulations of the Secretary of the Treasury, shall be unladen in the presence of and be inspected by a customs officer at the first port of entry at which the same shall arrive; and such officer may require the owner, or his agent, or other person having charge or possession of any trunk, traveling bag, sack, valise, or other container, or of any closed vehicle, to open the same for inspection, or to furnish a key or other means for opening the same."

2. "Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in,

knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned for not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury.

"As used in this section, the term 'marihuana' has the meaning given to such term by section 4761 of the Internal Revenue Code of 1954."

VII. (Urged by Medina.) Error in refusal to give offered instruction 5, on the credibility of witnesses.

VIII. (Urged by Mirenda and Medina.) Insufficient evidence to prove marijuana was imported unlawfully.

We conclude none of the errors urged have merit, and affirm the jury's conviction as to each defendant.

## I.

## FAILURE TO GRANT CONTINUANCE.

■ In urging error in the trial judge's refusal to grant a continuance, we are faced with the general rule of law that the trial judge has a large amount of discretion in granting or denying a continuance of a trial. Sendejas v. United States, 428 F.2d 1040, 1046 (9th Cir.1970), and cases cited therein; Moore v. United States, 394 F.2d 818, 819 (5th Cir.1968), cert. denied, 393 U. S. 1030, 89 S.Ct. 641, 21 L.Ed.2d 573.

■ We are required, in considering the exercise of such discretion, to turn to what happened, chronologically, in these cases prior to the motion for continuance, made on August 4, 1970, for *Mirenda*, and joined in orally on the same date on behalf of defendants *Medina* and *Fragoso*.

The crime charged in the indictment in this action allegedly occurred on June 7, 1970. The indictment was filed June 16, 1970. Medina and Fragoso were arraigned June 22, 1970, and Mirenda on June 29, 1970.

A motion to suppress (later amended) was filed on behalf of Medina on June 25, 1970, and set for hearing on July 20, 1970. On June 30, Mirenda was arraigned, and trial set for July 30, 1970. On July 2, 1970, Fragoso's motion to suppress was set for hearing on July 20, 1970. On July 9, 1970, the trial was continued from July 30, to August 4, 1970. On July 10, 1970, Notice of Trial on August 4, 1970 was sent to counsel for all defendants here appearing.

On July 16, 1970, Mirenda filed a motion to require the disclosure of the name of "confidential informant," *and the hearing of said motion was set for August 4, 1970, by the moving party*.

The motion to suppress came on for hearing on July 20, 1970. On the date, counsel for Mirenda suggested that the court might wish to rule then on his disclosure motion, at that time set for August 4, 1970 [R.T. Pleadings Vol. I, p. 75].

The prosecution then, for the record, advised the court of the government's efforts (and lack of success), to place the informer, a resident of Mexico, under "a material witness warrant of arrest, should he approach or come across the border.

The court, while indicating the testimony he had heard on the motion to suppress indicated the defendants knew the identity of the informer, and that the disclosure of his name would be an idle gesture, nevertheless, ordered the government to name the informer, and to produce him at the trial, "if possible" [R.T. Idem. p. 76], and to "make a report to the Court on the day prior to trial as to the results of its efforts to produce the informer." [*Idem.* p. 76].

*No objection was made by any defendant to this procedure.*

On the day prior to trial, August 3, 1970, the government reported to court and counsel with respect to its efforts: (a) that the true name of the informer, thought by the customs agent to be "Sergio Alarcon," had been reported to defense counsel; (b) that the informer's name was "Sergio Hidalgo-Ramirez," and not "Sergio Alarcon"; (c) that Hidalgo Ramirez was in government custody, having been served with a subpoena as a government witness; and that he would appear at the trial on August 4, 1970, as such witness. [R.T. August 3, 1970, p. 3].

At that time, Mr. Thikoll, counsel for co-defendants Coats and Mirenda "merely ask[ed] that I be given an opportun-

ity, place and time to interview him today," and for a two day continuance. [*Indem.* pp. 3–4].

The court granted the interview and set it for 3:30 p.m. on August 3, 1970,[3] but denied the motion for continuance. Thereafter, counsel for Verdugo, Medina and Fragoso joined in the motion for continuance, and each were denied.

At 3:40 p.m. on August 3, 1970, counsel for all appellants interviewed the informant. A reporter and an interpreter were present, as well as government counsel. The transcript of what took place appears in the Clerk's Transcript, pp. 99 to 109. The informer was advised of the judge's order hereinabove quoted. He declined to talk to counsel for the defendants as he understood he had the right so to do—stating, "It does not interest me to tell you now the things that I'm going to say in the trial." [C.T. p. 104]. The informant stated he had been served with a government subpoena "about five days ago," or approximately July 28, or 29, 1970.

*No objection was made by any defendant to the conduct of the interview, until the jury had been picked on August 4, 1970.* [R.T. Vol. I, p. 21].

On August 4, 1970, the trial started. Counsel for Mirenda filed a motion for a two day continuance. [R.T. Vol. I, p. 14]. The court stated he would rule on the motion later, and after the jury was chosen. The other two appellants herein joined in the motion for a two day continuance. Counsel for Medina then asked for a thirty day continuance. The government then disclosed the arrest record of the informant, and that he had been a reliable informant previously, in one narcotics case and two immigration cases. The court then denied the motions for a continuance, as well as others. [R.T. Vol. I, p. 26, line 17].

Had the government made any false representations, either as to the criminal record of the informer (or the lack of such), or as to when it first knew the informer's true name; or as to the reliability of his past actions as an informer, we can only assume the defendants would have discovered this falsity in time to urge the true facts, either during the trial, or on a motion for new trial. To this day the defendants' position is that they *might*, with a continuance even of two days, have discovered some fact of value to their defense. They have not attempted to suggest what that fact or facts might be.

Further, Medina at the trial testified as to his contact with "the informant that has informed" on June 7th, 1970, both at the Halfway Cafe, and the '84 Cafe in Tucson, and previously, in Nogales [R.T. Vol. II, p. 364]; and that he and Fragoso and the informer drove back from Tucson to Nogales, Sonora, in the same auto [Idem., p. 366].

Fragoso, on the other hand, testified he had never seen the *informant before the trial* [Idem., p. 391] (thus directly contradicting Medina). He later testified he had met the informant at the Halfway House with Medina (idem. p. 393), and at the '84 Cafe in Tucson (idem. p. 393), but never saw him again until the trial (again directly contradicting Medina) (idem. p. 400).

This testimony at the trial supports the court's statement made after hearing the evidence on the motion to suppress, that the defendants had at all times a very good idea of whom the informer

---

3. "THE COURT: So there be no misunderstanding the witness will be introduced to counsel. He will be informed that counsel desires to talk with him about this case. That he is perfectly entitled, it is perfectly proper for him to talk to counsel, there is no restriction on his talking to counsel. On the other hand it is a matter for him to decide. In other words, he is neither required to talk to counsel nor is he forbidden to talk to counsel. It should be made very evident to him that there is no restriction on his talking to counsel and if he desires he may do so privately with counsel, and in that event I would suggest you might move the proceedings then to the marshal's security tank and let counsel talk to the man there." [R.T. of Aug. 3, 1970].

might be, and that "the disclosure of his name would be an idle gesture." We agree.

We find no abuse of discretion in the court's denial of the motion for continuance.

## II.

## THE INTERVIEW BY DEFENDANTS' COUNSEL OF THE INFORMANT.

■ Counsel for the government complied fully with the court's order as to what the informant was to be told at his interview the day prior to trial. In no way does the instruction compare with that held improper in Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966) or United States v. Dryden, 423 F.2d 1175 (5th Cir.1970), or Byrnes v. United States, 327 F.2d 825 (9th Cir. 1964) as urged by appellants *Fragoso* and *Mirenda.*

Here there was no intimidation by the prosecutor, nor any advice by him not to talk to defense counsel, nor any interference with the prosecution. Quite the opposite was true. The prosecution carefully followed the trial court's instruction, hereinbefore quoted (Note 3). We find no error.

## III.

## ERROR IN REFUSAL TO PERMIT FRAGOSO TO REOPEN HIS CASE TO IMPEACH.

■ On the last day of the trial, just before arguments to the jury, counsel for Fragoso advised the court that he had learned that morning that a prisoner "in the tank" of the Tucson jail knew the informant, who "never works for a living and whom he had seen selling marijuana cigarettes" and he desired to reopen the case for impeachment.

The court held such testimony, offered as impeachment, would be inadmissible— there being no evidence offered of the conviction of any crime.

Appellant Mirenda joined in the motion to reopen, and later, based his motion for a new trial *solely* on the same offer to

impeach [C.T. p. 58]. The record discloses that at the hearing on that motion, Mirenda's counsel withdrew his motion for a new trial, stating: "Since filing the motion I have learned facts which make the motion improper." [R.T. p. 49, lines 13–16].

Whether the motion was adequately or properly made we need not decide. The evidence that the informant "never works for a living" was mere conclusion and opinion, and was not admissible as a fact. Upon the government's avowal and representation to the Court, as a fact, that the informant had on his record one misdemeanor conviction, no felony conviction, and "no narcotic involvement background" [R.T. Vol. I, p. 15], it was not error for the Court to refuse to reopen the case. Lyda v. United States, 321 F.2d 788, 793 (9th Cir. 1963).

## IV.

## PROOF OF FAILURE TO PRESENT MARIJUANA AT BORDER FOR INSPECTION.

■ Appellants Mirenda and Medina raise this issue, asserting no proof of failure to present the marijuana for inspection was introduced by the government.

This is based on the fact that the customs inspector ordered border guards not to stop the vehicle carrying the marijuana at the border, and because at a secondary inspection area, when the trunk was about to be searched, the same customs inspector ordered the vehicle to pass through without a search.

This position of these defendants is based on their interpretation of what constitutes an "inspection" of the merchandise.

19 U.S.C. § 1461 requires that any merchandise imported from any contiguous country, "be unladen in the presence of and be inspected by a customs officer at the first port of entry at which the same shall arrive."

This statute places the burden on the person importing the merchandise of

"unladening the vehicle in the presence of" the customs officer for inspection.

Regulation § 5.1, applying to merchandise brought into this country from a contiguous foreign territory, provides such merchandise "shall be listed on a manifest * * * certified by the person in charge of the vehicle." (19 C.F.R. Chapt. 1, part 5).

Thus under the appropriate statute and regulations, there existed in the facts of this case no unloading of merchandise from the vehicle, and no listing of merchandise on a manifest. Consequently, there was a failure on the part of the importer to present the merchandise for inspection at the border. Cf. Olar v. United States, 391 F.2d 773 (9th Cir. 1968).

## V.

### PROOF OF $1010 FOUND ON MEDINA.

■ As stated by counsel for Mirenda, who urges this error, some courts require proof of prior impecunious condition if defendant is arrested with substantial sums of money on him after the alleged crime, and "there are other cases which seem to prove those principles." We think it a matter of weight, rather than admissibility. In any event, we find no error.

Here, the trial judge found "sufficient connection to render it (the testimony concerning the money found on Medina at the time of arrest) material and admissible." [R.T. Vol. I, 194]. Thus, the case of Williams v. United States, 168 U.S. 382, 392, 18 S.Ct. 92, 97, 42 L.Ed. 509 (1897) relied on by *Medina*, is not applicable, for there was therein "no * * * connection shown between the possession * * * of the sums specified in the * * * bank-books, and the alleged extortion of two named sums * * * ($100.00 and $85.00). (*Idem.* p. 396).

Further, the objection urged below was based upon the alleged illegal seizure. On appeal it is based on a lack of proper foundation of prior impecuniosity. (See Self v. United States, 249 F.2d 32, 34 (5th Cir. 1957).

## VI.

### TELEPHONE RECORDS.

■ These records were entered and maintained in the usual course of business. They were properly authenticated as such, and were admissible. In briefs, no cases were cited by *Medina* and only cases approving the introduction of such evidence by *Mirenda*. No error exists under 28 U.S.C. § 1732(a). United States v. Dawson, 400 F.2d 194, 198 (2nd Cir. 1968); LeRoy v. Sabena Belgian World Airlines, 344 F.2d 266 (2nd Cir.1965) cert. den. 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119.

## VII.

### REFUSAL OF INSTRUCTION NO. FIVE.

Medina objects to the Court's failure to give Instruction No. 5. The Court ruled it was unnecessary because the subject was covered by other instructions given by him on the subject. We agree.

## VIII.

### INSUFFICIENCY OF EVIDENCE TO PROVE UNLAWFUL IMPORTATION.

Much of this alleged error is discussed in answer to Point IV above. If the jury believed the informer Sergio Hidalgo-Ramirez, the evidence supports the jury's implied finding that Mirenda and Fragoso knew the marijuana had been imported unlawfully, that they planned and aided the importation, and that they shared in the profits of the illegal importation. We find no error on this issue. Duprez v. United States, 435 F.2d 1276 (9th Cir. 1970).

We affirm as to all defendants appealing.