UNITED STATES of America, Plaintiff,

v.

Lee LINTON, Sorkis J. Webbe, Fred L. Kennedy, Robert C. Tindell, Aladdin Hotel Corporation, Dennis Piotrowski, Del E. Webb Corporation, James R. Comer, Defendants.

No. CR-R-80-24-ECR.

United States District Court, D. Nevada.

Aug. 12, 1980.

Geoffrey A. Anderson, Las Vegas Strike Force, U. S. Dept. of Justice, Las Vegas, Nev., for plaintiff.

Albert Kreiger, Miami, Fla., for Webbe.

V. Devoe Heaton, Las Vegas, Nev., for Kennedy.

Goodman, Oshins, Brown & Singer, Las Vegas, Nev., for Tindell.

James Shellow, Milwaukee, Wis., for Aladdin Hotel Corp.

James A. Twitty, Beverly Hills, Cal., for Piotrowski.

Lionel, Sawyer & Collins and John R. Lusk, Las Vegas, Nev., for Del E. Webb Corp.

James F. Duncan, Kansas City, Mo., for Comer.

Thomas D. Dockor, Chicago, Ill., for Linton.

## ORDER

EDWARD C. REED, Jr., District Judge.

This matter has come before the Court on the motion of the plaintiff (Government) to disqualify the law firm of Lionel Sawyer & Collins, which represents defendant Del E. Webb Corporation (Webb) herein, from also representing certain employees, and a former employee, of Webb in connection with this case. Those individuals have been subpoenaed by the Government to appear as witnesses at the trial, but none of them are defendants.

The Government contends that two of said witnesses, upon being contacted by the Government, expressed no objections to coming to the office of the Government attorney for interviews. The purposes of such pre–trial interviews would have been to permit the witnesses to review documents and records in the Government's possession, to preview the questions that the Government's attorney contemplated asking them at the trial, and to ascertain their attitude, e.g., whether any of them will

claim a Fifth Amendment privilege. All of the witnesses previously testified before a grand jury regarding the participation of Webb in certain acts alleged in the indictment in this case. The two witnesses who had indicated no objections to interviews had conditioned their cooperation on the approval of their attorneys. Subsequently the Government's attorney was contacted by Lionel Sawyer & Collins and advised that said law firm was representing the witnesses and that none of them would be appearing for pre–trial interviews.

The instant motion to disqualify followed. The Government contends that the dual representation (of a defendant and Government witnesses) has created a conflict of interest in the law firm that should be cured by disqualifying it from representing the Government witnesses.

A hearing was held on August 4, 1980, the Government being represented by Marvin L. Rudnick, Special Attorney with the Las Vegas Strike Force of the U. S. Department of Justice, and Lionel Sawyer & Collins being represented by David N. Frederick, Esq. At the close of the hearing the Court granted both sides until 4 p.m. of August 8, 1980, to file additional points and authorities.

A threshold question raised is whether this Court has jurisdiction to entertain the instant motion, in light of the notice of appeal filed by Webb on August 1, 1980, from my order denying its motion to dismiss the indictment against it. Said motion to dismiss was based upon alleged prosecutorial misconduct in creating a biased grand jury and knowingly using perjured testimony to obtain the indictment.

■ As a general rule, once a notice of appeal has been filed a United States district court is divested of jurisdiction to take any action except in aid of the appeal. See *Ruby v. Secretary of United States Navy*, 365 F.2d 385 (9th Cir. 1966), *cert. den.* 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967). However, an attempted appeal from a nonappealable order does not deprive the trial court of jurisdiction. *Resnik v. LaPaz Guest Ranch*, 289 F.2d 814 (9th

Cir. 1961); *Hoffman, Etc. v. Beer Drivers & Salesmen's, Etc.*, 536 F.2d 1268 (9th Cir. 1976). The procedural guidelines for the district court judge are aptly set forth in *Ruby*, supra, at page 389:

"Where the deficiency in a notice of appeal, by reason of . . . reference to a non–appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction. If the district court is in doubt as to whether the notice of appeal is inoperative by reason of . . . such defect, it may decline to act further until the purported appellee obtains dismissal of the appeal in the court of appeals. In the rare instance where the district court proceeds with a case under the mistaken belief that a notice of appeal is inoperative, the appellant may apply to the court of appeals for a writ of prohibition."

I am proceeding in determining this motion to disqualify because it is clear to me, for the reasons set forth immediately below, that Webb's notice of appeal is from a nonappealable order.

■ Denial of a motion to dismiss an indictment is not a final order (for purposes of interlocutory appeal) when the motion is not made on colorable grounds of double jeopardy, *United States v. Carnes*, 618 F.2d 68 (9th Cir. 1980), vindictive prosecution, *United States v. Burt*, 619 F.2d 831 (9th Cir. 1980) or the Speech or Debate Clause (Art. I, § 6 of the U.S. Constitution), *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979).

Webb's motion to dismiss the indictment was based on the contention of prosecutorial misconduct which allegedly resulted in a biased grand jury handing down the indictment. An analogous situation was involved in *Matter of Fendler*, 597 F.2d 1314 (9th Cir. 1979), where a person under investigation by a federal grand jury appealed from an interlocutory order denying his petition to conduct a voir dire of the grand jurors regarding their possible bias, prejudice or

economic interest. The Ninth Circuit Court of Appeals dismissed the appeal for lack of jurisdiction. Its reasoning is stated on pages 1315 and 1316 (citations are omitted) as follows:

"There is no reason to depart from the policy against piecemeal appeals in this case. If and when an indictment is returned against appellant, he can raise his claims in a motion to dismiss the indictment ... and since denial of such a motion is reviewable on direct appeal from a criminal conviction, denial of review now will not render review impossible. ... Because the rights appellant asserts will not be irreparably lost, application of the collateral order doctrine ... is also inappropriate. ...."

■ A defendant does not enjoy a "right not to be tried" which must be safeguarded by interlocutory appellate review. *United States v. MacDonald*, 435 U.S. 850 (1978), at ftnt. 7, 98 S.Ct. 1547, 56 L.Ed.2d 18. Webb's position is that there was insufficient evidence for the grand jury to indict it; but for the prosecutorial misconduct in prejudicing the grand jurors against it and using perjured testimony, Webb would not be facing trial. This reason for avoiding trial was, in effect, rejected in *Silverthorne v. United States*, 400 F.2d 627 (9th Cir. 1968), cert. den. 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971), *United States v. Polizzi*, 500 F.2d 856 (9th Cir. 1974) and *United States v. Y. Hata & Co., Ltd.*, 535 F.2d 508 (9th Cir. 1976), cert. den. 429 U.S. 828, 97 S.Ct. 87, 50 L.Ed.2d 92 (1976). The *Silverthorne* opinion, at 400 F.2d 634, explains:

"Our conclusion that appellant was not prejudiced by grand jury indictment is further supported by the fact that the grand jury deliberates and indicts, as an accusing body, on the standard of 'reasonable probability' that a crime has been committed by some person. It is not a trial body. (citation omitted). The quantum of evidence necessary to indict is not as great as that necessary to convict. If a grand jury is prejudiced by outside sources when in fact there is insufficient evidence to indict, the greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or innocence. And, if impartiality among the petit jurors is wanting, the cure is reversal by the appellate courts."

■ In order to fit into the collateral order doctrine allowing interlocutory appeal, the order sought to be appealed is required to be collateral to, and separable from the principal issue at the accused's impending criminal trial, i.e., whether the accused is guilty of the offense charged. *United States v. MacDonald*, supra. Webb's claim that it would not have been indicted but for prosecutorial misconduct will be largely satisfied if it is acquitted as a result of the prosecution's failure to carry its burden of proof. Id.

■ Since the Court considers it to be clear that Webb's appeal is from a nonappealable order, it also feels an obligation to decide the motion to disqualify at this time.

■ Our adversary system is not meant to obfuscate the truth. On the contrary, it is a means of attaining the ultimate objective of a criminal trial, which is to ascertain the truth. Access to witnesses before trial is a great aid in preparation for trial. As such, it tends to expedite proceedings, minimize the element of surprise, and help in the search for the truth. Nevertheless, a witness may not be compelled to grant a pre–trial interview to counsel. See *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979), cert. den. 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Mirenda*, 443 F.2d 1351 (9th Cir. 1971); cert. den. 404 U.S. 966, 92 S.Ct. 343, 30 L.Ed.2d 286 (1971); *United States v. Crouch*, 478 F.Supp. 867 (E.D.Cal.1979). However, an attorney must maintain a posture of strict neutrality when advising a witness as to whether to grant an interview with opposing counsel. Id. It would be improper to instruct a witness not to cooperate or to talk with lawyers for the other side; the only appropriate comment would be to the effect that the witness need not talk unless he wants to. *United States v. Matlock*, 491 F.2d 504 (6th Cir. 1974). Where a witness

has stated that he is willing to talk with defense counsel if the prosecuting attorney doesn't object, that attorney may not indicate to the witness that he disapproves of such an interview. *Mota v. Buchanan*, 26 Ariz.App. 246, 547 P.2d 517 (Ariz.1976).

Cooperation by a witness in permitting a pre–trial interview may result in his testimony having more credibility with the trier of fact. This is because a witness' refusal to talk to counsel may be brought out in trial as evidence relevant to the witness' possible bias. *United States v. Crouch*, supra. Further, it may be advantageous to grant an interview, because the witness may control the setting and scope of the interview. For example, in the instant case, a witness could limit the scope of the interview to review of documents and records. The witness even has the option of insisting that his own lawyer be present to advise him during an interview. *United States v. Mirenda*, supra; *Mota v. Buchanan*, supra.

■■■■■ The alternative to an interview, where the interest of justice requires, is a deposition pursuant to F.R.Cr.P. Rule 15. Since 1975 the unavailability of the witness at time of trial is no longer a condition precedent to the ordering of a deposition. *United States v. Mann*, 590 F.2d 361 (1st Cir. 1978). It is now within the sound discretion of the trial court to grant or deny a motion to depose a proposed witness in a criminal trial. *United States v. Richardson*, 588 F.2d 1235 (9th Cir. 1978), cert. den. 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). The possibility that a witness may be subjected to a deposition whose scope and conditions are set by law might serve as an inducement to that witness to grant a pre–trial interview whose scope and conditions would be set by himself.

■■■■■ A United States district court has the power to disqualify a law firm from representing a client or clients where a conflict of interest or serious possibility of a conflict of interest is found to exist. *United States v. Horak*, 465 F.Supp. 725 (D.Neb. 1979). Further, the Government has standing to make the motion for disqualification. *In re Gopman*, 531 F.2d 262 (5th Cir. 1976).

The starting point in any discussion about conflict of interest is the right of a person to counsel of his own choice. See *Willis v. United States*, 614 F.2d 1200 (9th Cir. 1979). This premise must be viewed, however, in light of the American Bar Association Code of Professional Responsibility. Rule 4(h)(1) of the Rules of Practice of the United States District Court for the District of Nevada specifies that the standards of conduct of attorneys before this Court shall be those prescribed by said Code. Among the canons of professional ethics that may be applicable where conflict of interest becomes an issue are: Canon 1 (maintaining integrity and confidence in the legal profession); Canon 4 (preserving confidences and secrets of a client); Canon 5 (exercise of independent professional judgment); Canon 6 (representing a client completely); Canon 7 (representing a client zealously within bounds of the law); and Canon 9 (avoiding even the appearance of professional impropriety). See *Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980).

■■■■■ Corporate counsel should not represent individual employees if there is any conflict. *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 417 (N.D.Ill. 1977). However, until an actual conflict is shown to exist or can be reasonably foreseen, an attorney may, in good faith, represent codefendants. *Willis v. United States*, supra. *Willis* further teaches that to prevail on a conflict of interest claim, the complaining party has the burden of establishing that the joint representation in fact has created a conflict of interest. A court may not find a conflict of interest out of mere conjecture as to what might have been shown. Id.; *Lugo v. United States*, 350 F.2d 858 (9th Cir. 1965). Conflict issues are not to be decided on the basis of speculation, but by a considered determination of whether, in fact, a conflict of interest exists. *Willis v. United States*, supra; *Carlson v. Nelson*, 443 F.2d 21 (9th Cir. 1971). Thus, facts and evidence are required before the right of a person to legal representation of his own choosing may be vitiated

on the ground of conflict of interest. *Matter of Grand Jury Empaneled January 21, 1975*, 536 F.2d 1009 (3rd Cir. 1976).

Some cases have declared that the dangers of a conflict of interest are greater in the context of joint representation than in the case of dual representation. "Joint representation" involves representation of co-defendants by the same law firm; "dual representation" is where a party's attorney has a legal (e. g., attorney–client) relationship with a witness. *United States v. Di-Carlo*, 575 F.2d 952 (1st Cir. 1978), cert. den. 439 U.S. 884, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). A greater evidentiary burden must be met to prove a conflict of interest in the case of dual representation. Id.; *United States v. Horak*, 465 F.Supp. 725 (D.Neb. 1979). This is the situation here, where Lionel Sawyer & Collins represents both a defendant and witnesses who have been subpoenaed by the plaintiff.

■ Although the chronology of events and the very fact of such dual representation arouses suspicion and creates a potential for conflict of interest, the Government has not provided facts and evidence sufficient to establish the existence of such a conflict nor the reasonable foreseeability that an actual conflict will arise. Therefore, its motion to disqualify Lionel Sawyer & Collins from representation of the proposed Government witnesses who are present or past employees of Webb must be denied at this time.

■ Counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest exists or is reasonably foreseeable as developing in the course of a trial. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Therefore, a trial court must be able to rely upon the good faith and judgment of counsel, for they are in the best position to know when a conflict exists or probably will develop. Id. Likewise, the trial court must be able to rely upon counsel's representations concerning conflict between clients. *Willis v. United States*, supra. Lionel Sawyer & Collins has made such representations in connection with the motion to disqualify in this case.

The denial of the Government's motion at this time does not mean that the conflict of interest question should be considered settled for the rest of the case; cooperation among counsel and the Court in identifying and meeting this type of problem must be ongoing. *United States v. Horak*, supra.

Counsel in this case have done nothing that calls for a lecture from the Court in connection with conflict of interest. I worry, nevertheless, over the seriousness of the possible consequences that could arise from the dual representation here involved. Although the clients may consent to and intelligently waive objections to a conflict of interest in their counsel, such a waiver would not suffice if confidential information were involved. ". . . consent to the mere representation of a client with adverse interests does not amount to either consent to breach of confidential disclosure or to the use of that information against the consenting party in litigation." *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 229 (7th Cir. 1978). In other words, the ethical requirement to utilize on behalf of one client confidential information obtained from another client could conceivably result in counsel's disqualification to represent both clients.

In any event, the motion to disqualify the law firm of Lionel Sawyer & Collins from representing trial witnesses, filed herein on July 24, 1980, on behalf of the plaintiff United States of America, is hereby DENIED.