In re COORDINATED PRETRIAL PROCEEDINGS IN PETROLEUM PRODUCTS ANTITRUST LITIGATION.

The CITY OF LONG BEACH, as Trustee for the State of California; State of California, on behalf of itself and all political subdivisions and special districts within the state similarly situated; State of Florida, ex rel. Jim Smith, Attorney General; State of Oregon, on behalf of itself, its residents and all political subdivisions within the state similarly situated; State of Washington, on behalf of itself and its public entities and residents; and State of Arizona, Plaintiffs-Appellees,

v.

STANDARD OIL COMPANY OF CALIFORNIA; Amerada Hess Corporation; Cities Services Company and Cities Service Oil Company; Conoco, Inc.; Getty Oil Company; Gulf Oil Corporation; Powerline Oil Company; Standard Oil Company of Indiana and Ohio; Sun Oil Company, Inc.; Atlantic Richfield Company; Mobil Oil Corporation; Phillips Petroleum Company; Exxon Corporation; Shell Oil Company; Texaco, Inc.; and Union Oil Company of California, Defendants-Appellants,

and

Leroy K. Cheney; Charles F. Temme; Milford E. Tracy; Clinton E. Kelley; L. John Gandsey; and Ralf Eckles, Third Party Deponents-Appellants.

MOBIL OIL CORPORATION; Exxon Corporation; Leroy K. Cheney; Ralf Eckles; L. John Gandsey; Clinton E. Kelley; Charles F. Temme; Milford E. Tracy; Union Oil Company of California; Howard K. Said; and Brobeck, Phleger and Harrison, Petitioners,

v.

The UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF CALIFORNIA, Respondent,

State of California; et al., Real Parties In Interest.

Nos. 80–5970 to 80–6028, 80–7669, 80–7756, 81–7013 and 81–7029.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 6, 1981.

Decided Oct. 13, 1981.

As Amended on Denial of Rehearing Nov. 23, 1981.

Maxwell M. Blecher, Blecher, Collins & Hoecker, Los Angeles, Cal., for City of Long Beach, et al.

Andrew J. Kilcarr, Donovan, Leisure, Newton & Irvine, Washington, D. C., for Mobil and Getty Oil Corps.

Michael I. Spiegel, Deputy Atty. Gen., San Francisco, Cal., for all plaintiff States.

Before GOODWIN and NELSON, Circuit Judges, and PRICE,* District Judge.

GOODWIN, Circuit Judge.

The district court, on the motion of the plaintiffs, entered an order disqualifying defense counsel from representing former employees of the defendants and their present employees (other than corporate executives) in connection with discovery depositions in several consolidated multi-district antitrust cases. The defendant corporations and the employee witnesses appeal. We find that we have jurisdiction of this appeal and vacate the order of disqualification. 502 F.Supp. 1092.

## I. JURISDICTION.

■ The proliferation of interlocutory appeals seeking review of orders entered at various stages of litigation has produced sometimes conflicting decisions among the circuits on the jurisdictional basis for appellate review. Denial of a motion to disqualify counsel is not an appealable order under the test set forth in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). *Firestone* reserved the question of the appealability of orders granting a motion to disqualify counsel. 449 U.S. at 372, n.8, 101 S.Ct. at 672, n.8.

The position of this circuit on the pending question is not clear. Even prior to *Firestone*, the Ninth Circuit did not hear appeals from denials of motions to disqualify. *See Chugach Elec. Ass'n v. United States D. C. For Dist. of Alaska*, 370 F.2d 441 (9th Cir. 1966), *cert. denied*, 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967). But this court has reviewed at least one order granting disqualification without discussing whether it was taking jurisdiction under the *Cohen* exception to 28 U.S.C. § 1291 or via mandamus. *See Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322 (9th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). Since *Firestone* the Fifth Circuit has held a disqualification order appealable under *Cohen* and *Firestone*. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020 (5th Cir. 1981).

We agree that this order granting disqualification is appealable under *Cohen's*

---

* The Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

three-part test. *Firestone* summarized the *Cohen* test as follows:

"... '[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.' [citation omitted]." 449 U.S. at 375, 101 S.Ct. at 674.

Under the first prong, we note that the *Firestone* Court, with two justices dissenting, found that even "[a]n order *denying* a disqualification motion meets the first part of the 'collateral order' test. It 'conclusively determine[s] the disputed question,' because the only issue is whether challenged counsel will be permitted to continue his representation...." 449 U.S. at 375–76, 101 S.Ct. at 674 (emphasis added). This consideration becomes stronger in cases where a disqualification motion has been *granted*, because once those affected by the order have acted on it—bringing in new counsel, for instance—the effect of the order is fairly irreversible.[1] It is not, as a practical matter, "subject to reconsideration from time to time," *Cohen, supra,* 337 U.S. at 546–47, 69 S.Ct. at 1226, because once a person's chosen attorney has been barred from representing that person, the person must then and there materially change his or her position in retaining another attorney or choosing to forego representation. *Cf. Firestone,* 449 U.S. at 380, 101 S.Ct. at 677 (Rehnquist, J., concurring in result only) (denial of disqualification motion does not conclusively determine disputed question where court may reconsider issue as trial progresses). The effect here is immediate and conclusive.

Second, the grant of a motion to disqualify counsel serves to "resolve an important issue completely separate from the merits of the action," *Firestone, supra,* 449 U.S. at 375, 101 S.Ct. at 674. It is not merely a step toward a final judgment into which it will merge. *Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225. The question whether counsel should be disqualified is a legal issue distinct and separate from the under-

lying antitrust issues involved in this case. It is not so enmeshed in the factual and legal issues comprising the plaintiff's cause of action, nor of such a nature as to permit fair assessment only after trial, as to militate against review at this time. Rather, given the magnitude of these consolidated pretrial proceedings, the number of attorneys already involved, and the seriousness of the question presented, we feel that this claim falls into the "small class [of cases] ... too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225, 1226.

Third, if this court withholds review at this time, the order of disqualification will be unreviewable on appeal from final judgment. The rights involved will be lost irreparably in a manner where, unlike the situation in *Firestone,* see 449 U.S. at 376–77, 101 S.Ct. at 675, remedy of a new trial after appeal from final judgment would not adequately redress any injury. *See Duncan, supra,* 646 F.2d at 1027. Furthermore, litigants facing a disqualification order do not have available to them the protection cited by the *Firestone* Court as a rationale for denying review of most pretrial discovery orders: "[I]n the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." 449 U.S. at 377, 101 S.Ct. at 675. An attorney choosing to defy a disqualification order faces not only contempt sanctions but direct disciplinary action for an ethical violation. This differs markedly from the case where an attorney in good faith takes the position that his *client* should not be required to comply with a discovery order; at least in that instance, the lawyer is not required to engage in what amounts to an act of civil disobedience with personal consequences in order to obtain review.

---

1. The significant differences between the two types of orders were summarized by the District of Columbia Circuit, as follows:

   " '[T]he finality of the two orders is as dissimilar as their results. An order granting disqualification seriously disrupts the progress of the litigation and decisively sullies the reputation of the affected attorney; but one refusing such relief merely allows the action to proceed and has no permanent effect of any kind. Here, as with a motion to

   dismiss an action or to grant summary judgment, while the affirmative grant of the requested relief is final and appealable, a mere refusal to act is necessarily less conclusive and ought not to be reviewed by this court. * * *' *Fleischer v. Phillips,* 264 F.2d 515, 517 (2d Cir.), *cert. denied,* 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959)." *Community Broadcasting of Boston, Inc. v. F. C. C.,* 546 F.2d 1022, 1025, n.13 (D.C.Cir.1976).

This court has held that an order disqualifying defense counsel in a criminal case is not appealable under the collateral order exception to the final judgment rule. *United States v. Greger*, 657 F.2d 1109, 1112 (9th Cir. 1981). That holding, however, was specifically limited to the context of a criminal case, and reserved the question presented here. *Id.* at 1113.

Distinct reasons for a different result apply in this civil case. The special policies which counsel against piecemeal appeals in criminal cases have no counterpart here. *Cf. Greger, supra*, at 1112. An appeal of a disqualification order in a civil case does not necessarily disrupt the litigation because activity must be postponed in any case while new counsel is obtained. Furthermore, in a civil case an order disqualifying attorneys for nonparties is effectively unreviewable by appeal from a final judgment. Finally, in a civil case, the presumption of prejudice which would mandate a new trial if error were established under the criminal law does not exist. *Cf. Greger, supra*, at 1113; *Slappy v. Morris*, 649 F.2d 718 at 723 n.4 (9th Cir. 1981).

It would place an almost insurmountable burden on a person who is not a party to the litigation to vindicate a right to counsel of his choice. Even a party would face serious difficulties if he were required to show on appeal from the final judgment that he had lost the case because he had been improperly forced to change counsel. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1027 (5th Cir. 1981).

In light of the above considerations, we conclude that we have jurisdiction to review this order under 28 U.S.C. § 1291 as a *Cohen* collateral order.[2]

2. The parties also petitioned for a writ of mandamus. Because we hold that we have jurisdiction to hear the appeal, we need not consider the mandamus petitions.

3. *But see, Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197 (4th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Woods v. Covington Cty. Bank*, 537 F.2d 804 (5th Cir. 1976) (holding that where the facts are not in dispute, district courts enjoy no particular functional advantage over appellate courts in their formulation and application of ethical norms and that it is proper for the appellate court to determine whether the district court's disqualification order was predicated upon a proper understanding of applicable ethical principles.

4. Local Rule 1.3(d) of the Central District of California states:

## II. THE STANDARD OF REVIEW.

■ This court has stated that the district court has the prime responsibility for controlling the conduct of lawyers practicing before it, and that an order disqualifying counsel will not be disturbed if the record reveals "any sound" basis for the district court's action. *Gas-A-Tron of Arizona v. Union Oil Co. of California, supra*, 534 F.2d at 1325 (9th Cir. 1976); *see Unified Sewerage Agency, Etc. v. Jelco Inc.*, 646 F.2d 1339 (9th Cir. 1981).[3] Thus, where the matter is discretionary, we will not reverse the district court unless it abuses its discretion. *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980). We may reverse, however, where the district court misperceives the law or does not consider relevant factors and thereby misapplies the law.

## III. THE MERITS.

### A. The District Court Decision.

The district court discussed two possible justifications for the disqualification order. In its accompanying memorandum of decision, the court first considered whether Canon 5 of the ABA Code of Professional Responsibility requires disqualification. The district court did not apply the local rule,[4] but applied only Canon 5 and accompanying Disciplinary Rule 5–105 in reaching its conclusion that the multiple representation at issue here did not give rise to a prohibited conflict of interest. *See generally, Unified Sewerage Agency, Etc. v. Jelco Inc., supra*, 646 F.2d 1339, (application of Canon 5 to disqualification motions in Oregon district court).

Because the local rule refers to both, a possible difficulty arises because of the dif-

"Every member of the bar of this Court and any attorney permitted to practice in this Court under paragraph (b) hereof shall familiarize himself with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto, which are hereby adopted as standards of professional conduct of this Court. This specification shall not be interpreted to be exhaustive of the standards of professional conduct. In that connection, the Code of Professional Responsibility of the American Bar Association should be noted. No attorney admitted to practice before this Court shall engage in any conduct which degrades or impugns the integrity of the Court or in any matter [sic] interferes with the administration of justice therein."

ference between the ABA Code and the analogous provision of the Rules of Professional Conduct of the State Bar of California. California Rule 5–102(B) sets what appears to be a different standard, in stating that "[a] member of the State Bar shall not represent conflicting interests, except with the consent of all parties concerned."

We need not attempt to resolve the possible inconsistency between the State Bar rules and the ABA Code, however. Our independent review of the ethical questions presented here persuades us that neither provision would operate to disqualify counsel in the instant case. Whether disqualification would be appropriate where one rule permitted multiple representation and another did not, we need not address at this time.

The district court next considered whether Canon 9 of the ABA Code requires disqualification. The court concluded that Canon 9[5] required disqualification in order to avoid the appearance of impropriety.

The court discussed four "troublesome ethical considerations" which arose in this case:

1) *The Determination of the Need for Counsel* : the court was concerned about the suggestion of explicit or implicit solicitation. The court noted that when the employees informed the company of the deposition notice, they might not have been looking for counsel of their own, or have thought they needed it. The court referred to Informal Ethics Opinion No. 828 (1965) which said that the attorney for the plaintiff company may not offer to represent during their deposition independent witnesses deposed by the defense.

2) *Pre-Deposition Insulation* : the court indicated that if an attorney-client relationship is established, the plaintiffs' attorneys will not be able to contact the witness directly to ascertain his knowledge or decide whether to depose him. The court noted that the representation limits the opposing counsel's ability informally to ascertain the scope of the witness' knowledge and the desirability of deposing him. It indicated that even though a witness need not con-

sent to an interview, the representation effectively insulates the witness from plaintiffs' counsel and gives that counsel no realistic chance to obtain the witness' consent to talk freely.

3) *Preparation for Deposition* : the court noted that if the attorney-client relationship with the witness did not exist, the plaintiffs could inquire into the records used to refresh the witness' memory and comments made to him by the company in orientation sessions. If an attorney-client relationship with the witness exists, however, the plaintiffs may not discover what occurred at the orientation session. The court noted that because the witnesses are not parties, the interests of justice require that both sides be entitled to their testimony and be able to make full inquiry into the influences that may have affected the testimony.

4) *Instruction Not to Answer* : the court stated that the witness' attorney might be tempted to object at the deposition and interrupt the plaintiff-interrogator not so much from a desire to protect the witness, as from a desire to serve the employer's interests. The court noted that it is unfair to an interrogator for his opponent to have such control over a nonparty witness. The court felt abuses might occur which would not merit sanctions.

The court acknowledged that its decision went beyond established precedent. The court referred to various authority, however, which involved disqualification motions based on Canon 9's appearance of impropriety test. The court noted that serious antitrust violations of national concern are charged in the lawsuit and that the public interest will be favored by employee disclosures that might be withheld if counsel were present. The court also relied on the Second Circuit's assertion that in the disqualification situation, doubts are to be resolved in favor of disqualification. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2nd Cir. 1975).

B. *The Appellants' Positions.*

The appellants first argue that the court erred in relying solely on Canon 9 to dis-

---

**5.** Although no direct counterpart to Canon 9 appears in the Rules of Professional Conduct of the State Bar of California, we will assume *arguendo* that the reference to the ABA Code in

Local Rule 1.3(d) sufficiently invokes Canon 9 as to make it a basis for an order such as the one under review. *See* discussion above.

qualify the law firms. They next argue that the district court should not have ruled on the basis of mere speculation. They contend that factual findings should have been made. The appellants also argue that the court improperly weighed the four factors to arrive at its conclusion of impropriety. They respond to the court's four points in the following manner:

1) *Insulation of Witnesses*: the appellants respond that the court cited no authority which suggests that insulation of witnesses is a proper factor for the court to consider in disqualification motions. They refer the court to *United States v. Linton*, 502 F.Supp. 871 (D.Nev.1980), which denied a disqualification order in an analogous case.

2) *Pre-Deposition Insulation*: appellants have argued that the plaintiffs do not have an absolute right to interview witnesses because the witnesses may always refuse consent.

3) *Preparation for Deposition*: the appellants argue that even without the disqualification order, the plaintiffs would not be able to question the witnesses regarding their exchanges with the employers' counsel. They argue that this communication is protected by *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). They also refer to Fed.R.Evid. 612, which they say allows the district court to require production of any writing used to refresh a witness' memory. (They note that this is true even though the writings might have been protected by the attorney-client relationship.)

4) *Instruction Not to Answer*: the appellants argue that the district court need not have resorted to disqualification because other sanctions were available. Some appellants also argue that the attorney is not serving two masters, but appears at the deposition only on behalf of the employer.

### C. *The Scope of Canon 9.*

■ Thus, the first issue the court must decide is whether Canon 9 alone can be the basis for a disqualification motion. Strong policy reasons support an affirmative answer. The court is instructed to safeguard the integrity of the judicial process in the eyes of the public. *See Jelco, supra*, 646 F.2d at 1349. Where the lawsuit in question involves the state suing on behalf of its citizens, rather than litigation between two private parties over a private problem, this interest must be particularly strong. Moreover, Local Rule 1.3(d) of the Central District of California provides that:

"... No attorney admitted to practice before this Court shall engage in any conduct which degrades or impugns the integrity of the Court or ... interferes with the administration of justice therein."

In addition, Local Rule 1.3(d) refers attorneys appearing before the District Court of the Central District of California to the Code of Professional Responsibility as well as the California State Bar Act. If Canon 9 were not separately enforceable, it would be stripped of its meaning and significance. This suggests that it must be a sufficient ground for disqualification in itself.[6]

On the other hand, it is desirable that an attorney or client be aware of what actions will not be countenanced. Advance notice is essential to the rule of law. The need for standards and guidelines for attorney conduct was eloquently articulated in *Woods v. Covington Cty. Bank*, 537 F.2d 804 (5th Cir. 1976).

After carefully reviewing the policy considerations on both sides, we hold that Canon 9 alone can be the basis for a disqualification motion. In order that the court may in fact control the conduct of attorneys

---

**6.** The reporter for the ABA Committee that drafted the Code of Professional Responsibility recently noted that the Code's Disciplinary Rules were drafted for use in disciplinary proceedings and were not intended to be used as rules governing disqualification motions. Sutton, *How Vulnerable is the Code of Profession-* *al Responsibility?*, 57 N.C.L.Rev. 497, 514–16 (1979). Nevertheless, the Code will continue to provide guidance to the courts in determining whether a case would be tainted by the participation of an attorney or firm as shown by the Central District of California's Local Rule 1.3(d).

appearing before it, the court should have the ability to disqualify attorneys if their conduct actually interferes with the integrity of the court, or actually produces an appearance of impropriety. However, an order of disqualification by a district court that is not based on articulable principles cannot be sustained. This court will affirm such an order only where the impropriety is clear and is one that would be recognized as such by all reasonable persons. *See, e. g., Gas-A-Tron, supra,* 534 F.2d at 1325; *Woods v. Covington Cty. Bank, supra,* 537 F.2d at 813 (the Canon 9 standards are not those imputed only to the most cynical members of the public.) The impropriety must affect the public's view of the judicial system or the integrity of the court.

### D. *The Finding of Impropriety.*

■ Appellants are correct in asserting that the plaintiffs supplied no authority for the court to conclude that the four factors discussed earlier created ethical problems and infringed upon the integrity of the court. This, however, is not controlling. If the situation does endanger the integrity of the court, it is immaterial that the same circumstances have never been considered before. The crucial question is whether the concerns expressed are indeed present or merely anticipatory and speculative. In other words, did the court have a basis for finding apparent improprieties that were serious enough to outweigh the parties' interests in being represented by counsel of their choice?

In light of *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), which was decided after the district court entered its order, we are satisfied that the district court would have ruled the other way if *Upjohn* had been decided before the district court had to act.

*Upjohn* undercuts factor No. 3, relied upon by the district court. The plaintiffs' attorneys may not discover what transpired in the "orientation session" whether or not the defense attorneys act as counsel for the witnesses at the deposition.[7] Without factor No. 3, the other factors are insufficient to support the disqualification order. Factor No. 1—the solicitation factor—is a problem more properly addressed to the organized bar than to the court. The "solicitation" alleged, even if it could be substantiated, does not cut to the heart of the integrity of the system so as to require the court to take drastic steps to safeguard the image of the judicial process in the eyes of the public. Moreover, we note that in light of *Upjohn,* the definition of solicitation in the corporate-counsel context is altered. Factor No. 2—the pre-deposition insulation—is an inconvenience, admittedly, and a frustration. But mere inconvenience and frustration do not warrant interference with the right to counsel.

Nor can factor No. 4—the instructions not to answer—support the order. Assuming, without deciding, that the attorney represents two different clients, the employee and the company, this problem can be dealt with by the judicious use of sanctions. The trial judge in this particular case is obviously sensitive to potential abuses. He may instruct the attorneys on how to conduct the depositions; for example, that they may interrupt the proceedings only on behalf of their witness-clients. They may be called upon to explain why an interruption was made. Costs can be as-

7. *Upjohn* reversed the Third Circuit's "control group" test for the scope of the attorney-client privilege in the corporate context. It held that information concerning potential violations transmitted by Upjohn's current employees to corporate counsel was privileged.

Although *Upjohn* was specifically limited to current employees, 101 S.Ct. at 685, n.3, the same rationale applies to the ex-employees (and current employees) involved in this case. Former employees, as well as current employees, may possess the relevant information needed by corporate counsel to advise the client with respect to actual or potential difficulties. *See id.,* at 683. Again, the attorney-client privilege is served by the certainty that conversations between the attorney and client will remain privileged after the employee leaves. Although no findings were made, it is clear that at least some of the conversations referred to by the district court were made to counsel for the companies in order to secure legal advice for the company. The orientation sessions undoubtedly provided information which will be used by corporate counsel in advising the companies how to handle the pending lawsuit.

sessed against counsel for vexatious delays. In addition to the sanction of costs, the court, after a warning, has contempt power. Finally, the court could always suggest to the plaintiffs that they renew their motion to disqualify should specific behavior problems occur.

## IV. CONCLUSION.

1) We have jurisdiction to review the order granting disqualification in this case under the *Cohen* collateral order doctrine. 2) While Canon 9 can be the sole basis for a disqualification order, in this case the disqualification order was not supported by Canon 9. 3) *Upjohn*, which was decided after the district judge entered his order, protects the information under factor No. 3 which the district judge thought would have been accessible under his order. Without that factor, insufficient reason exists to disqualify the attorneys. Accordingly, the order disqualifying counsel is vacated.

Vacated and remanded.