**UNITED STATES of America, Plaintiff,**

**and**

**Columbia Pictures Industries, Inc., Gulf and Western Industries, Inc., MCA, Inc., Twentieth Century-Fox Film Corporation and Warner Communications, Inc., Witnesses/Appellants,**

**v.**

**COLUMBIA BROADCASTING SYSTEM, INC., Defendant/Appellee.**

**UNITED STATES of America, Plaintiff,**

**and**

**Columbia Pictures Industries, Inc., Gulf and Western Industries, Inc., MCA, Inc., Twentieth Century-Fox Film Corporation and Warner Communications, Inc., Witnesses/Appellants,**

**v.**

**AMERICAN BROADCASTING COMPANIES, INC., Defendant/Appellee.**

Nos. 80–5345, 80–5346.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1981.

Decided Jan. 22, 1982.

Ronald L. Olson, Los Angeles, Cal., argued, Nancy Y. Bekavac, Munger, Tolles & Rickershauser, Los Angeles, Cal., on brief, for Columbia Pictures.

Daniel H. Margolis, Washington, D. C., argued, Bergson, Borkland, Margolis & Adler, Washington, D. C., George Vradenburg, III, Robert S. Rifkind, Cravath, Swaine & Moore, New York City, on brief, for CBS.

Before GOODWIN, NELSON and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

This is a consolidated appeal by five nonparty witnesses who were subpoenaed to produce massive quantities of documents and deposition testimony for use in antitrust suits brought by the Justice Department. The issues are whether this court has jurisdiction to review the district court's order denying the nonparty witnesses' postproduction motion for reimbursement of their substantial discovery costs, and, if so, whether the denial of reimbursement without stated reasons constituted an abuse of discretion.

We conclude that the order was final as to these nonparty witnesses, and thus appealable under 28 U.S.C. § 1291, by operation of the collateral order doctrine first articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We further conclude that, in light of the district court's failure to articulate findings of fact or conclusions of law in support of its decision, the record before us affords an insufficient basis for determining whether the court properly exercised its discretion in denying the nonparties any reimbursement for their discovery costs. Accordingly, we reverse and remand.

## I.

### Facts

Appellants are five producers of television programming (the "studios")[1] who were subpoenaed as nonparty witnesses by CBS and ABC (the "networks") to produce extensive pretrial discovery material for use in antitrust suits brought against the networks by the Justice Department. The Government's nearly identical complaints against the networks principally challenged the manner in which the networks acquired prime-time programming from independent producers such as the studios.

The first three and one-half years of the litigation consisted primarily of disputes over jurisdiction, the legal sufficiency of the Government's case, and the Government's discovery demands on the networks. The district court eventually ordered the Government to identify "with particularity" each of its claims and the evidence it intended to offer. The Government's "Identification of Evidence" indicated that it planned to challenge a wide range of the networks' dealings with program suppliers and talent, specifically putting in issue several hundred transactions spread over more than a twenty-year period.

In August and September 1978, the networks served subpoenas duces tecum and ad testificandum upon the nonparty studios and a number of their officers and employees who the Government had identified as witnesses. Consistent with the breadth of the Government's case, the networks' discovery demands were extensive. The subpoenas sought production of most of the material in the studios' control that pertained to production of television programming and theatrical films since 1960.

The studios moved to quash the subpoenas pursuant to Fed.R.Civ.P. 45(b). In the motion, the studios expressly "reserved" the right to seek reimbursement of discovery costs if production was ordered. The studios subsequently filed memoranda in support of their motion to quash in which they specifically requested the networks to pay at least some discovery costs.

The district court ruled on the motion to quash on March 6, 1979, enforcing most of the subpoenas with limited modifications and setting a deadline for compliance. The order contained no mention of costs. The studios did not seek timely reconsideration or appellate review of the order, and, instead, immediately began to comply with its dictates.

In order to comply with the network's discovery demands, the studios hired and trained large staffs of lawyers, paralegals, accountants, and clerks to glean relevant material from their warehouse-sized depositories of archived documents. Thousands of boxes of documents were transported to offices specially set aside and equipped by the studios for discovery purposes, where the documents were reviewed, organized, copied, and sent to the networks. The networks also subpoenaed numerous officers and employees of the studios. Seventeen of these individuals were eventually deposed over a period of more than eighty work days.

The studios filed five Status Reports during the eighteen months it took to complete document production. In these five reports, the studios kept the district court informed of the progress they were making in production, the type of services and facilities they were providing, and the costs they were incurring. The studios also reiterated to the district court and the networks their intention to seek reimbursement of costs.

On March 14, 1980, after having produced all the requested documentary material, the studios filed a motion seeking termination of discovery and reimbursement for some or all of the approximately $2.3 million out-of-pocket costs they allegedly incurred in complying with the networks' discovery demands. By minute order dated March 27, 1980, the district court declared discovery complete and declined to award the studios any reimbursement. The order contained

1. Columbia Pictures Industries, Inc.; Gulf & Western Industries, Inc.; MCA, Inc.; Twenti- eth Century-Fox Film Corporation; and Warner Communications, Inc.

no findings of fact or conclusions of law pertaining to the denial of costs.

The studios filed a timely appeal from the March 27, 1980 minute order, arguing that the denial of any reimbursement constituted an abuse of discretion. On October 20, 1980, a motions panel of this court denied the networks' motion to dismiss for lack of appellate jurisdiction without prejudice to its renewal before the present merits panel. Final consent judgments were entered against CBS and ABC on July 31, 1980 and November 14, 1980, respectively.

## II.

### Appellate Jurisdiction

#### A. *Timeliness of the motion for costs*

The networks contend that the studios' motion for costs was untimely under Fed.R. Civ.P. 45(b) because it was made a year after the district court ruled on the motion to quash and after compliance with the subpoenas was virtually complete. Rule 45 provides that the district court, "upon motion [to quash or modify the subpoena] made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may ... (2) condition denial of the motion upon the advance-

ment ... [of costs]." Seizing upon the language of the Rule, the networks contend that Rule 45(b) makes the "advancement" of costs available only as a "condition" of denying a motion to quash, and contains no provision for awarding costs after discovery is complete.

Under the networks' logic, in order to avoid having any right to eventual reimbursement foreclosed, a nonparty witness would have no alternative but to file a motion to quash and to demand advancement of costs as a *sine qua non* of production. This procedure would be mandatory according to the networks even where the witness is willing to produce the requested documents and where the compliance costs are not susceptible to reasonable pre-production estimation. Moreover, because orders pertaining to motions to quash are generally interlocutory, a nonparty witness desiring review of that portion of an order declining to condition denial of a motion to quash upon advancement of costs would have to refuse to produce and be punished for contempt.[2] Thus, a witness willing to produce would be forced to suffer contempt and to interrupt discovery, thereby indefinitely delaying trial, solely to resolve the question of entitlement to costs.

**2.** In *Alexander v. United States*, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), the Court established the now familiar principle that for a nonparty to obtain review of an interlocutory discovery order, he must violate the order and incur contempt sanctions. *See also, Cobbledick v. United States*, 309 U.S. 323, 326, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940); *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971). We have interpreted the Court's decisions to allow nonparties to appeal civil as well as criminal contempt orders. *See, e.g., Union of Professional Airmen v. Alaska Aeronautics Industries, Inc.*, 625 F.2d 881, 884 (9th Cir. 1980); *David v. Hooker, Ltd.*, 560 F.2d 412, 415–17 (9th Cir. 1977) (direct appeal was permitted from that portion of the order requiring the nonparty to pay costs and attorney fees as a sanction under Rule 37 because it was analogous to fines imposed for contempt); *Fenton v. Walling*, 139 F.2d 608, 610 (9th Cir. 1943), *cert. denied*, 321 U.S. 798, 64 S.Ct. 938, 88 L.Ed.2d 1086 (1944). *Accord In Re Irving*, 600 F.2d 1027, 1032 (2d Cir.), *cert. denied sub. nom, Di Lapi v. Irving*, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979); *Kaufman v. Edelstein*, 539 F.2d 811, 813–14 (2d Cir. 1976);

*North Carolina Ass'n of Black Lawyers v. North Carolina Board of Law Examiners*, 538 F.2d 547, 548–49 (4th Cir. 1976); *Borden Co. v. Sylk*, 410 F.2d 843 (3d Cir. 1969).

In contrast to the procedure applicable to a nonparty, a party's ability to seek review is contingent upon the court punishing non-compliance with criminal, rather than merely civil, contempt sanctions. *Doyle v. London Guarantee & Accident Co.*, 204 U.S. 599, 27 S.Ct. 313, 51 L.Ed. 641 (1907); *Fox v. Capital Co.*, 299 U.S. 105, 107, 57 S.Ct. 57, 58, 81 L.Ed. 67 (1936); *Goldblum v. National Broadcasting Corp.*, 584 F.2d 904, 906 n.2 (9th Cir. 1978). The justification advanced in *Doyle* for the disparate treatment accorded party and nonparty witnesses is that in the case of nonparties, "the proceeding is entirely independent and its prosecution does not delay the conduct of the action between the parties." 204 U.S. at 605, 27 S.Ct. at 314. For a persuasive criticism of *Doyle* and its progeny, *see* Andre, Jr., *The Final Judgment Rule and Party Appeals of Civil Contempt Orders: Time for a Change*, 55 N.Y.U.L. Rev. 1041 (1980).

■ Whatever merit the networks' argument may have in the abstract, it has none on the facts of this case. The studios expressly reserved the right to seek post-compliance reimbursement in their motion to quash. The district court's March 6, 1979 order pertaining to the motion to quash contained no mention of costs. We see no reason why the court's failure to address the studios' reservation of the right to seek reimbursement constitutes an implied or *sub silentio* denial of the reservation. The court's silence, coupled with the subsequent conduct of the parties and court, is more susceptible to being interpreted as tacit approval of the reservation of the studios' right to seek post-compliance reimbursement.

Our conclusion in this regard is corroborated by several facts. First, the record contains no indication that either the court or the networks objected to, or sought clarification of why, the studios filed five Status Reports detailing, *inter alia*, the costs they were incurring during the course of document production. The record discloses a similar lack of reaction to the fact that, during the same period, the studios reiterated their intention of seeking reimbursement following production. Second, a stipulation was entered into by the studios and networks, in conjunction with the studios' post-production motion for costs, that contains no indication that the networks objected to the motion as having been previously adjudicated. The stipulation notes that the two sides were unable to settle the reimbursement issue and contains a brief synopsis of the networks' arguments on the issue, none of which included the issue of timeliness. The stipulation was filed the day before the district court entered its March 27, 1980 minute order denying costs. Third, the language of the district court's minute order suggests that it was the first and only time the court addressed the reimbursement issue. The order provides that the "Court declines to award costs," and includes no indication that it was modifying, supplementing, or reaffirming a prior ruling on the issue.

## B. Authority to award post-compliance reimbursement

Given that the studios expressly reserved their right to seek reimbursement and kept the court and networks fully informed of their progress and expenses throughout the lengthy production process, we discern nothing in Rule 45 that precludes post-compliance reimbursement of costs. The networks were on notice throughout the production process that the studios intended to seek reimbursement and they could easily have modified or limited their discovery demands whenever they felt that their exposure to potential reimbursement exceeded the value of requested material. Accordingly, we have little sympathy on the facts of this case for the networks' lament that deferral of a Rule 45(b)(2) determination until after compliance with a subpoena may result in grave injustice by visiting liability for costs on parties, who cannot then escape the consequences.

■ We conclude that the district court had authority, in its discretion, to award reimbursement in this case under either Fed.R.Civ.P. 45(b) or 26(c).[3] Rule 45 discloses a "broad congressional judgment with respect to fairness in subpoena enforcement proceedings." *United States v. Friedman*, 532 F.2d 928, 937 (3rd Cir. 1976) (interpreting analogous provision in tax code). Consistent with this purpose, the Rule has been used creatively to require interim reimbursement and reimbursement of costs at the conclusion of discovery. *Securities Exchange Commission v. Arthur Young & Co.*, 584 F.2d 1018, 1022, 1034 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979); *Celanese Corp. v. E. I. duPont de Nemours & Co.*, 58 F.R.D. 606, 612 (D.Del.1973).

Rule 26(c), setting forth grounds for protective orders, was enacted as a safeguard

---

**3.** Although the parties do not discuss Rule 26, the Rule was brought to the trial court's attention in the studios' Motion for Protective Order and Renewed Motion for Costs dated March 14, 1980.

for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b). 8 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 2036, at 267. Subsection (c) underscores the extensive control that district courts have over the discovery process, authorizing courts to make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, *or undue burden or expense*" (emphasis added). Thus, as Wright and Miller note, "a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." *Federal Practice and Procedure, supra*, at 269, *citing Brulotte v. Regimbal*, 368 F.2d 1003, 1004 (9th Cir. 1966). To conclude otherwise would contravene the policy that the Federal Rules should be construed "to secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1. We hold that, under the facts of this case, the district court had authority to award post-compliance reimbursement.

*C. Finality of the order denying costs*

Having determined that the motion for costs was timely and that the district court possessed authority to award post-compliance reimbursement, we now turn to whether the court's March 27, 1980 minute order denying costs was an appealable final order. The Expediting Act, 15 U.S.C. § 29(a), provides that there shall be no appeal from interlocutory orders in Government antitrust actions. The standard for determining whether orders are interlocutory or final under the Expediting Act is the same as under 28 U.S.C. § 1291. *See Kaufman v. Edelstein*, 539 F.2d at 813–14.

■ As already noted, discovery orders are generally characterized as interlocutory [4] and review may be sought only through

the contempt process or by waiting for the entry of a final judgment in the underlying action. As Professor Moore notes: "Most orders … denying discovery do not finally dispose of the proceeding or of any independent offshoot of it, and are, therefore, not appealable." 4 Moore's *Federal Practice* ¶ 26.83[3], at 26–585.

The studios contend that the subject order, denying post-production reimbursement of costs, should not be governed by the general finality rule. They argue that the order falls within the collateral order exception to the finality rule established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The studios emphasize that they have no other way of obtaining meaningful review because: (1) the contempt procedure was unavailable once the subpoenaed material was produced because there was nothing they could then do to be held in contempt—i.e., it is impossible to disobey an order denying costs; and (2) as nonparties, they would be unable to test the costs issue by appeal from a final judgment in the underlying action. We address this issue by first examining the interests served by the final judgment rule.

The finality requirement is designed to balance the institutional interests of the courts in efficiency against the individual litigant's interest in obtaining prompt review. By preventing premature interference with discretionary trial court orders, the finality rule minimizes the disruption and delay of trial court functions and the strain on both the parties and judicial system caused by proliferation of appellate proceedings by piecemeal review of interlocutory orders. *See generally*, 15 *Federal Practice and Procedure: Civil, supra*, § 3912; 9 Moore's, *supra*, at ¶ 110.07.

---

4. *See* n.2, *supra*, and accompanying text. Discovery orders have been held final, however, where the pending proceeding is limited to application for discovery, such as Rule 27 orders authorizing depositions for perpetuation of testimony, or orders denying discovery in aid of execution under Rule 69, or orders disposing of letters rogatory under Rule 28. *See generally,*

*Federal Practice and Procedure, supra*, § 2006, at 29. Similarly, an order entered in a supplemental proceeding in one district to obtain evidence for use in an action pending in another district is regarded as an appealable final order as to nonparty witnesses. *See* 4 Moore's, *supra*, ¶ 26.83[5], at 26–594 to 596.

Consistent with these considerations, the Court has given the finality requirement a "practical rather than a technical construction," *Cohen*, 337 U.S. at 545, 69 S.Ct. at 1225, and has recognized certain exceptions to the rule. *See Forgay v. Conrad*, 47 U.S. (6 How.) 212, 214, 12 L.Ed.2d 404 (1848) (hardship doctrine); *Cohen*, 337 U.S. at 546–47, 69 S.Ct. at 1225–26 (collateral order doctrine); *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152–54, 85 S.Ct. 308, 310–12, 13 L.Ed.2d 199 (1964) (pragmatic finality). The critical inquiry in determining whether a particular order is appealable under one of these exceptions to the finality rule is not only whether the order fits neatly within the exception, but, additionally, whether appeal would be consistent with the purposes of the rule. *Andre, Jr.*, *supra*, 55 N.Y.U.L.Rev., at 1062.

▮ To come within *Cohen*'s collateral order doctrine "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). Although most discovery orders do not meet the requirements of the collateral order doctrine,[5] even as to nonparties,[6] the subject order clearly falls within the

narrow class of orders that does.[7] First, the order denying costs was not, in the language of *Cohen*, "tenative, informal or incomplete," 337 U.S. at 546, 69 S.Ct. at 1225. The order left no issue as to costs, or as to any other matter affecting the studios' involvement in the action, "open, unfinished or inconclusive." *Id.* Second, the order resolved an issue "separable from, and collateral to, rights asserted in the action." *Id.* Because discovery against the studios was complete when costs were denied, appeal entailed no risk of delaying proceedings in the underlying action. The post-production denial of costs was "too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225. Third, this is not a case of merely "deferring" review, for we see no way that the nonparty studios could have protected themselves by appeal from the consent judgments eventually entered against the networks.

Accordingly, we conclude that the subject order fits well within *Cohen*'s narrow exception to the finality rule, and does so consistent with the beneficial purposes of the rule. As we stated in *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 228 (9th Cir. 1975):

---

**5.** *See* 9 Moore's, *supra*, ¶ 110.10. *See, generally, Firestone Tire and Rubber Co. v. Risjord*, 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981) (pretrial order denying motion to disqualify opposing counsel not appealable under *Cohen*).

**6.** Although the Tenth Circuit has held that an order denying a nonparty's motion to quash is appealable under *Cohen* in some circumstances, *Saunders v. Great Western Sugar Co.*, 396 F.2d 794 (10th Cir. 1968); *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir.), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965), that position has been explicitly rejected by this and every other circuit that has addressed the issue. *See David v. Hooker, supra. Accord Evanson v. Union Oil Co. of California*, 619 F.2d 72, 74 (Emer.Ct. App.), *cert. denied*, 449 U.S. 832, 101 S.Ct. 102, 66 L.Ed.2d 38 (1980) (citing this court's decision in *David v. Hooker, supra*); *Kaufman, supra; North Carolina Board of Law Examiners, supra; Borden Co. v. Sylk, supra; United*

*States v. Anderson*, 464 F.2d 1390 (D.C.Cir. 1972); *United States v. Fried*, 386 F.2d 691 (2d Cir. 1967). *See also* 4 Moore's, *supra* ¶ 26.-83[6], at 26–598 (criticizing the Tenth Circuit's position). The issue in these cases involved document production, not post-production reimbursement for costs, and the decisions are premised on the fact that the contempt process was still available to the nonparties as a means of seeking review.

**7.** *See generally, In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 658 F.2d 1355, at 1356–57 (9th Cir. 1981) (order granting motion to disqualify counsel in civil case appealable under *Cohen*); *Koster & Wythe v. Massey*, 262 F.2d 60, 62 (9th Cir. 1958) (order holding plaintiff liable for marshal's costs for storage of attached property appealable under *Cohen*); *Preston v. United States*, 284 F.2d 514, 515 n.1 (9th Cir. 1953) (order refusing to impose a lien for attorney's fees *pendente lite* appealable under *Cohen*).

Regardless of how its holding is restated, ... the Court in *Cohen* applied common sense to the statutory language. Congress limited our jurisdiction to review of "final decisions" not in order to deny appeal arbitrarily to some parties on some issues, but to enable all stages of litigation to be reviewed in one proceeding. [citation omitted]. If the district court has said its last word on an issue, and if its decision is of a nature that it will not be subject to review on the appeal from the final judgment of the main proceeding, then the courts will not suppose Congress to have precluded immediate appeal of that decision.

We emphasize that the studios were willing to proceed with discovery, regardless of whether they could eventually recover costs. To require that they disobey the discovery orders and incur contempt citations in order to preserve their claim to costs would be counter-productive, resulting in considerable delays in the trial process. This is in marked contrast to the more common context in which the right to discovery itself is contested. Appeal of such discovery orders, without deterrence of the contempt requirement, would result in lengthy delays of trial and multiplication of appeals. Here, however, the added efficiency of promptly proceeding with the trial more than offsets any increased burden incurred by entertaining the appeal of the order denying costs. We conclude, therefore, that the order denying costs has the requisite finality to be appealable.

### III.

### Nonparty Discovery Costs

[6] Our final inquiry in this case is whether the district court abused its discretion by denying the studios any reimbursement for their substantial discovery costs. In making this determination we "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). *See also, Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 648 (9th Cir. 1980) (order barring discovery against nonparty reviewed for abuse of discretion); *In re Master Key Litigation*, 507 F.2d 292, 294 (9th Cir. 1974) (denial of protective order under Rule 26(c) reviewed for abuse of discretion).

Our ability to engage in meaningful review is severely hampered by the district court's failure to articulate any reasons for its decision. Absent such articulation, we can only speculate as to what factors the district court considered relevant, and are left without guidance to explore the vast expanse of this record in search of "evidence on which he rationally could have based that decision." *Dart Industries*, 649 F.2d at 648.

■ Although party witnesses must generally bear the burden of discovery costs,[8] the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party. Although we decline to curtail district courts' discretion over the discovery process by adopting the formal guidelines favoring nonparty reimbursement advocated by the studios,[9] we nevertheless empha-

---

8. *See generally, Hurtado v. United States*, 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973); *In Re Grand Jury No. 76–3 (MIA) Subpoena Duces Tecum*, 555 F.2d 1306, 1308 (5th Cir. 1977); 8 J. Wigmore, *Evidence* § 2192, at 70–74.

9. Although the Federal Rules of Civil Procedure have provided a discretionary mechanism for awarding costs for over forty years, there are few reported decisions in which the factors that should be considered in making cost awards are articulated, and even fewer such decisions involving nonparties. The studios distill four factors from the handful of district court cases in which costs have been awarded to nonparties. *See Celanese Corp. v. E.I. duPont de Nemours & Co.*, 58 F.R.D. at 611–12 (requesting party required to pay some of the nonparty's costs of production based on finding that the discovery demands were overly broad); *Collins and Aikman Corp. v. J.P. Stevens &*

size that a witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party.

■ The networks argue that the district court could have found the studios' discovery costs reasonable because: the studios were "interested" in the outcome of the litigation; the studios are large corporations able to bear the burden of discovery costs; and the requested material was relevant to the networks' defense. Although these contentions, particularly the first one, have some bearing on the allowance and amount of reimbursement, we find them insufficient on the face of the present record to support the district court's unexplained decision.

First, the fact that the studios, as well as the public, stood to benefit from the Government's actions, or were in fact primary beneficiaries of the eventual consent decrees, does not alone require them to bear all the expenses of discovery. Adopting the networks' position might chill the willingness of victims of antitrust violations to cooperate with the Government if that cooperation could subject them to unreimbursed discovery as "interested" nonparties. The networks' argument also ignores the Government's uniquely independent role in antitrust enforcement. No matter how interested the studios allegedly were, they were nevertheless powerless to dictate the scope of the Government's case or the network's defense. Second, the fact that the

studios are, like the networks, large corporations does not make the $2.3 million in discovery costs they allegedly incurred "reasonable." Absent some compelling justification, even large nonparty corporations like the studios should not be compelled to subsidize the defense of other large corporations. Finally, the fact that the nonparty discovery may have been relevant to the networks' defense does not persuade us that it is any fairer for the nonparty to bear the complete cost.

■ We conclude that, without guidance from the district court, the record before us affords an insufficient basis for determining whether the district court properly exercised its discretion in denying the studios any reimbursement for their discovery costs. Although we believe that, barring factors of which we are now unaware, the studios are entitled to the award of some compensation, the present record provides an inadequate basis for determining what amount if any would be reasonable. Accordingly, we remand the matter to the district court for re-examination of the issue in light of this opinion,[10] and for preparation of adequate findings of fact and conclusions of law supporting its eventual decision.

REVERSED AND REMANDED.

Co., 51 F.R.D. 219, 221 (D.S.C.1971) (requesting party must bear costs of *in camera* review by special master of voluminous nonparty patent files); *Novak v. General Hospital Electric Co.*, 10 F.R.Serv.2d 1177, 1179 (S.D.N.Y.1967) (requesting party held responsible for costs of *in camera* review of possibly privileged material obtained from nonparty). The four factors are: (1) the scope of the discovery; (2) the invasiveness of the request; (3) the extent to which the producing party must separate responsive information from privileged or irrelevant material; and (4) the reasonableness of the costs of production. While these considerations are important, we do not view them as inflexible or exclusive.

**10.** In exercising its discretion regarding the allowance and amount of reimbursement, the district court should consider, in addition to the factors we have already discussed, the relative recalcitrance of the studios and networks as to the discovery process generally and whether the networks can properly be considered to have prevailed under the terms of the eventual consent judgments. If reimbursement is ordered, it may also be necessary to decide whether it is appropriate and lawful to assess any portion thereof against the Government.