**In re LETTERS ROGATORY ISSUED BY THE NATIONAL COURT OF FIRST INSTANCE IN COMMERCIAL MATTERS N. 23 OF THE FEDERAL CAPITAL OF THE ARGENTINEAN REPUBLIC.**

Civ. A. No. 92–MC–350.

United States District Court,
E.D. Pennsylvania.

Nov. 2, 1992.

Stephen P. Chawaga, Fitzpatrick and Tanker, Philadelphia, Pa., for Daniel de las Carreras.

Teresa N. Cavenagh, Duane, Morris & Heckscher, Philadelphia, Pa., for Aydin Corp.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Señor Daniel de las Carreras ("Carreras") sought a subpoena for documents located here in the Eastern District of Pennsylvania, through Letters Rogatory, for his prosecution of a civil stock fraud action in the Argentine Courts. This Court issued the requested subpoena on September 25, 1992. Presently before the Court is Aydin Corporation's Petition to Quash or Modify Subpoena and Carreras's Motion for Expedited Disposition. Aydin Corporation is a non-party to the foreign action, but the holder of the requested documents. For the following reasons, Aydin's Petition is DENIED in part and GRANTED in part. The Court will not Quash the subpoena, but the Court will require Carreras to reimburse Aydin for its expenses in complying with the subpoena. Further, Carreras's Motion for Expedited Disposition is GRANTED.

## I. FACTS AND PROCEDURAL DEVELOPMENTS

On July 28, 1986, Señor Daniel de las Carreras filed suit with the National Court of First Instance in Commercial Matters No. 23, Buenos Aires, Argentina. *Daniel Jose Jaime de las Carreras v. Guillermo Enrique Shaw and Others on Ordinary Proceedings.* Carreras alleges that Mr. Enrique Shaw ("Shaw"), and four other defendants, are directors of the Argentine company Alicanto, S.A. ("Alicanto"), and that they defrauded Carreras into selling his Alicanto stock for less than fair market value. In 1981, Carreras sold his 20% stock interest in Alicanto to Shaw. Carreras now claims that he would not have sold

his stock had Shaw disclosed that Alicanto was about to enter into a series of agreements with Aydin. The terms of the Alicanto–Aydin agreements would have entitled Alicanto to 15% of Aydin's telecommunication sales to the Argentine Armed Forces. The allegations in the Argentine Court are that the total revenue to Alicanto, from the sales, exceeded $8.5 million dollars. The claim of stock fraud, as well as other claims for inadequate payment arising out of the exchange rate, failure to register the stock and fraud are pending on the merits in Argentina.

By Order dated September 25, 1992, this Court granted a subpoena, pursuant to Letters Rogatory, compelling Aydin to make available certain documents and material, requested by the Argentine Court. This Court instructed Aydin to produce all documents listed in subparagraphs A) 1) through A) 12) and (b)(a) through (b)(n) of the Letters Rogatory. Aydin was to deliver the requested documents to the office of a Special Examiner within the Eastern District of Pennsylvania by October 5, 1992. On October 2, 1992, Aydin filed a Petition to Quash or Modify the Subpoena. Carreras replied on October 12, 1992, and Aydin filed a reply brief on October 21, 1992.

Finally, on October 23, 1992, Carreras filed a Motion for Expedited Disposition of Aydin Corporation's Petition to Quash or Modify Subpoena. Carreras has informed the Court that he must produce the Letters Rogatory in Argentina by November 13, 1992, or be in "procedural delay." *Motion for Expedited Disposition* ¶ 4–5; *Carreras exh. A* (translated statement of Alfredo F. Robredo, Esq., expressing clerk of court's concern).

## II. DISCUSSION

■ The subpoena issued in this case was made pursuant to Letters Rogatory. Title 28 U.S.C. § 1782, which Congress amended in 1964, provides in relevant part:

(a) the district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal ... to the extent that the order does not prescribe otherwise, the testimony or statement shall be taken ... in accordance with the Federal Rules of Civil Procedure.

*Id.* Because this is a subpoena granted pursuant to Letters Rogatory, this Court has broad discretion to decide whether to honor requests for foreign assistance. *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151, 1154 (11th Cir.1988). In *Trinidad and Tobago* the Eleventh Circuit outlined in great detail the legislative history behind certain parts of 28 U.S.C. § 1782. The relevant import of that discussion is that Congress has sent the courts a clear mandate to aid in the assistance of foreign judicial proceedings: both civil and criminal. *Id.* at 1152–53.

■ The discussion to Quash or Modify the Subpoena under the Federal Rules of Civil Procedure must take place against this Congressional backdrop. In 1991, Federal Rule of Civil Procedure 45 was amended vesting this Court with considerable authority to modify the terms of a subpoena in order to protect nonparties in a civil suit. Rule 45(c)(3) provides in relevant part:

(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

. . . . .

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

. . . . .

(iii) requires a person who is not a party or on officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

Fed.R.Civ.P. 45(c)(3)(A)–(B). As Practice Commentary C45–20 to Rule 45 makes clear, "the theme of the new subdivision (c) is sounded in its first paragraph, which imposes on the attorney ... the obligation of taking reasonable steps to avoid imposing undue burden or expense on the subpoenaed person." *Siegel, Practice Commentary C45–20 (Duty to Avoid "Undue Burden" on Subpoenaed Person; Sanctions for Abuse), 28 U.S.C.A., Fed.R.Civ.P. 45, at 384–85).*

1. *Compulsion to Breach Aydin's Contract with the Argentine Air Force*

■ Aydin's first objection to the subpoena is that its compliance will force Aydin to breach its contract with the Argentine Air Force and is a threat to Argentine national security. (*Aydin Memorandum,* at 4). This argument places the Court in the precarious position of having to decide between enforcing a foreign court's request for assistance and potentially violating that same nation's national security.

In support of its position, Aydin submits one page of the Aydin–Air Force contract outlining that the commercial material is considered "CONFIDENTIAL." (*See Aydin Exh. D,* at ¶¶ 2.0 to 5.0). Aydin's specific objection is that it cannot disclose any contents of the contract without the prior consent of the Argentine Air Force. *See* Fed.R.Civ.P. 45(c)(3)(B)(i) (trade secret exception). Similarly, Aydin suggests that Carreras should seek the information directly from the Argentine Air Force to avoid national security and future business violations. (*Aydin Memorandum,* at 6). In the alternative, Aydin suggests that this Court should quash the subpoena because its scope is unduly burdensome. Fed.R.Civ.P. 45(c)(3)(A)(iv).

■ Carreras raises two responses. First, Carreras claims that Aydin has not met its burden of showing a particular harm that justifies quashing the subpoena because the photocopies of the Aydin–Air Force contract are not specific and provided without an affidavit. Carreras cites *In re Coordinated Pretrial Proceedings,* 669 F.2d 620 (10th Cir.1982) where the Tenth Circuit stated, "a party seeking to quash a subpoena duces tecum has a particularly heavy burden as contrasted to a party seeking only limited protection." 669 F.2d at 623.[1]

Aydin responded by filing with this Court the affidavit of Palle S. Christensen, the former West Coast Division President of Aydin. (*Aydin Response Memorandum,* Exh. A). Christensen explains that the contract provisions relate to the specific Aydin contract in dispute and that the Argentine Air Force did require the confidentiality provisions. *Id.* at ¶¶ 2, 8–9.

After submitting the supplemental exhibit, Aydin argues in its *Response Memorandum:*

> This Court is not in a position to evaluate the risk to Argentina's national security by the production of contract documents

---

**1.** This Court notes that there are two very important distinctions between the present case and *Coordinated.* Initially, *Coordinated* concerned a party's request to suppress the subpoena. Here, Aydin is not a party to the action and therefore warrants heightened protection. *See*

*Siegel, Practice Commentary C45–20, Fed. R.Civ.P. 45.* Second, the *Coordinated* case concerned a protective order arising out of Fed. R.Civ.P. 26(c). This Court finds that with the 1991 amendments to Rule 45, that it need not

which the Argentine Air Force has explicitly deemed confidential.

This Court agrees, but finds that the Argentine Court is capable of making such decisions and has done so. The decision by any United States Court to order a private company to take actions that might violate the national security of a foreign sovereign is a concern of the highest significance. However, this Court concludes that by issuing the Letters Rogatory there is a presumption that a foreign court considered its own national security concerns and found them consistent with the subject matter of the civil action. In the absence of any evidence by Aydin that this subpoena represents a threat to Argentine national security, the presumption must rest with the foreign court.[2]

The appropriate response to Aydin's concerns is for this Court to enter a protective order, modifying the subpoena, requiring that Carreras neither disclose nor publish any of the material listed in the Letters Rogatory. Fed.R.Civ.P. 26(c) (protective orders). Further, should Aydin or the Argentine Air Force conclude that the contents of the Letters Rogatory present a threat to Argentina's national security, they should present such evidence to the Argentine Court for a modification of that court's discovery order.

### 2. Confidentiality Under Fed.R.Civ.P. 45(c)(3)

 This Court also rejects Aydin's argument to Quash the subpoena on the grounds that the content of the documents is protected under the Trade Secrets provision of Fed.R.Civ.P. 45(c)(3)(A)(iii). Some courts have found that a general "fishing expedition" into confidential material is grounds to quash a subpoena. See e.g.,

Marsillo v. National Surety Corp., 112 F.R.D. 692 (D.Mont.1986). This Court, however rejects Aydin's argument on two separate grounds.

First, the mere fact that documents discuss trade secrets does not make them per se undiscoverable under Fed.R.Civ.P. 26–37. See United States v. International Business Machines Corp., 81 F.R.D. 628, 630 (S.D.N.Y.1979) (blanket generalizations of "sensitive and confidential" material insufficient to thwart discovery). The Federal Rules of Civil Procedure show a strong preference for broad discovery. See Rules 26–37. Where full discovery is inappropriate due to cost or undue burden, court's have the option to enter a protective order or require certain sensitive portions of documents to be redacted. Laxalt v. McClatchy, 116 F.R.D. 455 (D.Nev.1986). At this point in the proceeding, the generalized statements of confidentiality are not specific enough to warrant quashing the subpoena.

Second, this Court must assess the Rule 45(c) concerns in the context of the Letters Rogatory. As the Court discussed earlier, Congress has expressed its preference for international cooperation in foreign judicial proceedings. Accordingly, this Court must, through its discretion, balance not only the normal confidentiality concerns under Fed.R.Civ.P. 45, but also the strong Congressional policy directive to assist the Argentine courts. Accordingly, quashing the subpoena is inappropriate and Aydin's motion is DENIED.

### 3. The Remaining Arguments to Quash or Modify

In light of the international nature of this case, Aydin's remaining arguments do not justify quashing the subpoena.

---

base its decision on a protective order under Rule 26(c).

**2.** This Court, without further substantiation, must reject Aydin's argument that the Argentine Court did not consider these issues. The Letters Rogatory detail specific contract and financing documents that Carreras is entitled to obtain. Even though Aydin and the Air Force were not parties before Argentine court, this Court presumes that the subject matter of the contracts, leading up to the alleged fraud, must have been presented to the foreign tribunal. As Aydin's

own memorandum makes clear, Alicanto Corporation, which also has a number of the documents, is a party to the foreign suit. Accordingly, this Court will not quash the subpoena. See Letters Rogatory (translation), Carreras Memo, at 3–4. Similarly, the Court rejects Aydin's argument that discovery upon this Court's subpoena and the Letters Rogatory would violate ¶ 10–312 of the United States Department of Defense, Industrial Security Manual for Safeguarding Classified Information (DOD 5220.22–M, Jan. 1991).

### (a) Availability in Argentina

■ Aydin's argument that the documents are available in Argentina is not a sufficient basis for rejecting the Letters Rogatory. This Court's Discussion section makes clear that Carreras will have to compensate Aydin for its expense in producing the documents. Accordingly, whether Carreras chooses to pursue the documents here in the United States, rather than Argentina, is a litigation decision Carreras will have to make. This conclusion is further supported by the spirit of 28 U.S.C. § 1782, which seeks to keep United States courts out of procedural and organizational processes in foreign courts.[3] *In re Request for Judicial Assistance from the Seoul District Criminal Court, Seoul, Korea,* 555 F.2d 720, 723 (9th Cir.1977).

### (b) Comity Between the United States and Argentina on Pretrial Discovery and the Availability Under Argentine Law

■ Aydin next argues that this Court should quash the subpoena because Argentina does not reciprocate pre-trial discovery, or in the alternative, that the material is not discoverable under Argentine law. (*Aydin Memorandum,* at 10–11, citing Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters).

■ The Third Circuit has addressed both of these arguments and summarily rejected them. *John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132 (3d Cir.1985). The *John Deere* court's opening paragraph stated:

> This appeal presents the question whether 28 U.S.C. § 1782(a), which governs judicial assistance rendered to foreign and international tribunals and to litigants before such tribunals, requires a district court to consider: (1) the availability of reciprocal foreign procedures, and (2) the ultimate admissibility of evidence in the foreign jurisdiction prior to granting a discovery order requested by a foreign litigant. We hold that 28 U.S.C. § 1782(a) imposes no such requirement.

*Id.* at 133. In *John Deere,* the Third Circuit reversed the district court's decision to deny a discovery order based on the district court's conclusion that the material would not be discoverable under Canadian law. *Id.* at 135. The appellate court stated:

> Whatever the Canadian law might be with respect to reciprocity, Congress did not intend section 1782 orders to depend upon reciprocal arrangements.

*Id.* Similarly, this Court finds that discovery, based upon the Letters Rogatory, would not offend the Argentine Court system. *Letters Rogatory,* at 12 (expressing that all matters contained in Letters are "within Argentine law and beyond further appeal"); *John Deere,* 754 F.2d at 136 (offense to foreign courts a consideration).[4]

### 4. Petition to Quash Due to Oppressive and Burdensome Scope of Discovery

■ Aydin's final argument is that this Court should exercise its discretion and quash the subpoena under Fed.R.Civ.P. 45(c)(3)(A)(iv); *see also* C. Wright and A. Miller, 9 *Federal Practice and Procedure* § 2457 at 435 (party petitioning to quash bears burden of proving oppression). This Court finds that despite the large number of documents in question, Carreras has provided a detailed list, stating with particular-

---

**3.** The fact that the Argentine court authorized such discovery in the Letters Rogatory supports the inference that the material is not available in Argentina. Nevertheless, in deferring to the Argentine court's request, this Court need not resolve this factual dispute.

**4.** This Court similarly dismisses Aydin's argument that the case must be "pending" in Argentina. In *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151 (11th Cir.1989), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989), a case cited by Aydin, the Eleventh Circuit made a detailed review of the legislative history behind § 1782 and concluded that Congress specifically struck the "pending" requirement. *Id.* at 1154 n. 8. This Court finds the legislative investigation in *Trinidad and Tobago* to be a thorough review of the 1964 amendments. Based on the reasoning in that opinion, Aydin's argument that there must be a pending proceeding is rejected. (*See also* Carreras's *Expedited Motion* discovery due in Argentina by November 13, 1992).

ity the documents to be produced, and Carreras has specifically delineated his request by phase of the litigation. *See* Letter Rogatory at 7–12. *In re Application of Olga Sumar*, 123 F.R.D. 467, 472–73 (S.D.N.Y.1988) (documents sought for Argentine civil action through Letters Rogatory requested with sufficient particularity).

Finally, as Carreras suggests, the appropriate action at this point in the discovery process, coupled with the imminent need to comply with the Letters Rogatory by November 13, 1992, in Argentina, is to enforce the subpoena. Aydin will comply with this Court's Order and Carreras will be free to petition the Court for assistance should the documents not be transferred in a timely manner.

### 5. *Reimbursement Costs for Non–Party Aydin's Production of Documents*

■ Both the Advisory Committee Report and the *Practice Commentaries* are unequivocally clear that under Fed.R.Civ.P. 45 this Court "shall" include in its order granting a subpoena to a non-party a provision for "defraying the expenses that the production, inspection, copying, etc., may require." *Practice Commentary*, C45–21, 28 U.S.C.A., Rule 45 at 389. The Advisory Committee expressly adopted the Ninth Circuit's holding in *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 371–72 (9th Cir.1982). *Id.* at 389.

In *Columbia Broadcasting* the court stated:

Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party. Although we decline to curtail district courts' discretion over the discovery process by adopting the formal guidelines favoring nonparty reimbursement advocated by the studios, we nevertheless emphasize that a wit-

ness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party.

666 F.2d at 371–72 (footnotes omitted). This Court holds, in accord with *Columbia Broadcasting* and the Advisory Committee notes, that Aydin should not have to bear the expense of production when it is not a party to the foreign action.

The plain language of Rule 45(c)(3)(B)(iii) supports this Court's conclusion:

If a subpoena requires a person who is not a party ... or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be *reasonably compensated,* the court may order appearance or production only upon specified conditions.

Fed.R.Civ.P. 45(c)(3)(B)(iii) (emphasis added). The Advisory Committee further provided:

The court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs. In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been produced, provided that the risk of uncertainty is fully disclosed to the discovering party.

*Advisory Notes,* (cited in 28 U.S.C.A., Fed.R. 45 at 403); *Columbia Broadcasting*, 666 F.2d at 372. Aydin has represented to the Court, in both its Petition to Quash and its reply brief, that it believes the cost of production may be substantial. (*Aydin Memorandum* at 13; *Reply Brief* at 7–8). The Court finds that Aydin's representations provide adequate notice to Carreras of the potential costs and satisfies the requirements set forth in the Advisory Committee Notes. The Court will not "fix the costs in advance of production" but will hold Carreras accountable, upon subsequent Motion from Aydin, for the reimbursement of its reasonable production

costs.[5] The production of documents under the Letters Rogatory will go forward subject to the modifications set forth in this opinion.

---

**5.** The Court is also persuaded that in light of the pending November 13, 1992 deadline for discovery production in Argentina, that the Letters Rogatory are better served by beginning production immediately rather than being subject to further delay by time spent calculating the potential cost of production. The Court reemphasizes, however, that Carreras proceed in his production request against the non-party under the warning that Aydin anticipates that cost of producing the documents for inspection in the Eastern District of Pennsylvania will not be insignificant.